The Honorable Court, all rise. The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Please be seated. Court is in session. Good morning, ladies and gentlemen, everybody present. Let's begin by calling the first case for argument. Thank you, Judge. The first case, number 23-1385, Julia Dutra et al. v. Trustees of Boston University. At this time, would counsel for the appellants please introduce herself on the record to begin? May it please the Court, Catherine Lee Boyd for appellants. Your Honor, is there any time for rebuttal? I would, Your Honor. I would like four minutes. Okay. You may, and let me, before you start your argument, we're very, I speak for the panel, we're interested in that you start telling us about your point of view about the Massachusetts law that was recently enacted, ADB, if I think that's the best point to start. Why doesn't that control the disposition of the case? So you may proceed. May it please the Court. I had not planned on starting with ADB, but I plan to argue ADB, so I will do that now. Section ADB is an unconstitutional statute, a retroactive statute. It meets no standard of reasonableness that is required and is under the standards even set forth by Boston University. First, it offers no actual future protection. It merely snuffs out vested rights under the contract law of Massachusetts that's been in place for centuries. Institutions for 250 years have relied on, and students have relied on, contract law that provides all of the protections that the universities need in an emergency. That argument doesn't get you very far. At best, you had an implied contract claim, but it is commonplace in due process retroactivity analysis for those who say the statute is unconstitutional to rely on contract rights. That doesn't win it. Very often there is some sort of impairment of expectation rights. That's why the lawsuits get brought. Let's go back to there's no possible reasonable basis for it. The governor of Massachusetts thought that COVID was an emergency that required restricting the number of people who could gather together in one place. Can we agree on that? Yes, we can, but this law doesn't advance those interests. Because it's retroactive, it's long past the pandemic, it doesn't actually immunize or give any protections in the future for future emergencies, although that's listed as one of the public policies that one of the district courts have found. It doesn't advance future interests. It doesn't protect these universities more than the contract law already protects them. But what it does do, and this is why it fails the reasonableness test in a public policy. It doesn't protect them more than contract law. It rules out any possible claim for damages. Not in the future, Your Honor, only in the past. The future is merely a wink, wink, nudge, nudge that if there's another emergency, we will maybe immunize you retroactively again. That is textually on its face, not constitutional. And under policies, it's not reasonable. Oh, I'm sorry. Your argument is then that any retroactive statute must, by the very nature of it being retroactive, impair rights. That obviously is not a good argument. So let's go back. What is unreasonable here about the governor's mandate with which the university tried to comply by canceling in-person classes? The government's mandate is not this statute that applies to immunize lawsuits, immunize institutions from lawsuits. Many of those lawsuits took advantage of contract law, and they were immunized by the basis of contract law. We're not going to conflate, Your Honor, the mandate, which was abided by by the EU, and that's why their performance has been excused under the contract. Their performance was excused, and now we're in the land of restitution. But this statute is backward-looking. It doesn't immunize future institutions against future liability for future emergencies. But what it does do is turn contract law upside down. What are students' reasonable expectations to be now? I am a mother sending my son, God willing soon, across the river to school. What am I to think? I have no reasonable expectations, because the legislature will give a pass to whatever happens. So I can't read the words that Harvard says or BU says, because I know now that what's constitutional is that retroactively any contract rights that I have, any promises that this institution makes, can be immunized retroactively. And this is just a wink and a nudge, because it textually does not actually immunize future. It can't. By definition, we don't know what emergencies are coming. God willing, they won't. But if they do, the 250 years of contract law and restitution law, which is what I did want to address, which was the fundamental error in this case, was not applying restitution, that both parties agree and the district judge is due under Massachusetts law. And restitution is measured by looking at the net benefits. Can I please go back? I understand that, of course, law 80 was signed into existence after the final judgment was entered in this case, hence its retroactivity. This was first raised in your opponent's brief, because of the timing of it. You then responded. In that response, you said the retroactivity violates both the federal constitution and the Massachusetts constitution. Is that correct? That is correct. Okay, so you have a federal constitutional claim as well as a state constitutional claim. Correct. Why, then, did you argue almost exclusively in terms of supreme judicial court case law on retroactivity? We chose the cases that applied, we thought, best to make our arguments. I don't think we left out federal constitution. There are standards for retroactive application statutes that on their face are retroactive. Under those standards, this does not pass muster under both Massachusetts and federal constitution. But I think Massachusetts has so much interest in this because it's Massachusetts law, the restitution law that was not applied here by the district court. The law of restitution in section 49 and 50 of the Restatement Authority of Restitution in Massachusetts measures exactly what our expert measured, the net benefit conferred. Can an interest in the future financial stability of institutions of higher education constitute a rational purpose? Only if it's based in reality, and here it's not. I mean, there's no showing of financial instability because most of the institutions, Judge Howard, took advantage of the contract law. They had disclaimers, which BU has now. But I'm asking as a legislative matter. I don't think if it's not based in reality, no, I don't think so. I think it has to be based in a showing, an actual finding legislatively that there was a financial and I'm sorry, Your Honor, there is no showing of financial instability. Is there any case that you have to support that statement? I'll be sure to give that to you because later in years I'm not going to get it right at the ready. Would you agree that this type of legislation is economic legislation? Would you agree? No, I think it's an amnesty and immunization, I mean, immunizing liability for institutions that have very strong lobbyists and they can pay for that and it turns contract law upside down and the law of restitution, which should be applied here on remand for a trial of restitution because our evidence from our expert met the standard of restitution. Net benefits measured from the perspective of the innocent recipient of unrequested benefits, which was the remote online and I'd like to just give one example of what our case is about. If I could just indulge the court, let's say the Boston Symphony Hall, which I know is true, is having Yo-Yo Ma perform it in April, the great Yo-Yo Ma, and I saw tickets are $900 to $400 based on where you're sitting. Let's say I purchased one of those tickets for $900 on the orchestra and there is another virus and the state decides we're not going to have a gathering of audience but we will allow with masks the symphony to play and Yo-Yo Ma to play and what is offered to us that's unrequested is streaming. You can now sit in your, but you've paid $900 but this is what you're going to get. You're going to get streaming of Yo-Yo Ma. Yo-Yo Ma is the same, he's the same whether you see him in your, and some people might value sitting at home, my husband would, more than the orchestra. So we do an analysis, which is what our expert did, to find out the discount because we would all agree under Massachusetts law restitution is due for the discount between the ticket price and what the market value from my perspective as an unrequested beneficiary, the innocent beneficiary, and that's why BU has it wrong, Section 50 of Restatement 3rd. I would be due a restitutionary discount and that is our case in a nutshell. What doesn't matter, your honors, is their cost because Boston Symphony Hall can't say, wait a minute, we don't know your ticket price back based on that discount because we have to keep the hall going, we pay mortgages, we have unions, we have to keep it going. That's irrelevant, it's not tied to the underlying transaction, which is what restitution is. It's tied to the underlying transaction and there's multiple case law on that, which I can say for your honors, but it has to be tied to the transaction. In fact, the Burt Court, where Judge Halpy served, states that in the discussion on the fees, you understood what restitution was due, it was that the plaintiffs didn't put forward evidence. You said, after the Rhode Island adduced uncontradicted evidence, showing it continued to provide plaintiffs the benefit of the bargain, so it's tied to the Constitution, through Spring 2020, by continuing to use the funds from the fees to provide student services and to cover maintenance costs, it was incumbent upon plaintiffs to rebut this evidence. Guess what? We rebutted it with Hal Singer's conjugate analysis that just measured the market value of the substitute service. And again, I go back to Laity. In Burt, when I sat on the panel, the case was before the court. Rhode Island did not at that time, I don't know if there's one now, of the equivalent of Law 80. There was not a Law 80B. Well, Your Honors, I'm arguing 80B is unconstitutional and should not be applied to this case, and I believe you have the right to remand this with instructions to the District Court to find it unconstitutional because it does not... Counsel, like all good lawyers, although we redirected you and you replied on Law 80, you have now gotten your argument on the merits, and thank you. And you have rebuttal, so. Ms. Sullivan. Thank you, Counsel. At this time, if the attorney for the appellee will please introduce herself on the record to begin. Good morning, Your Honors, and may it please the Court. Kathleen Sullivan for Boston University. Section 80B provides a complete ground for affirmance in this case, and this Court can reach it without remand because it's a pure question of law, whether its retroactive application is constitutional, requires no fact-finding, and the resolution of the constitutional question is easy, as Judge Gorton has already found in the Brandeis and Boston College cases, and that's because whether you apply state law, Judge Lynch, or federal law, it's the same reasonableness test, the same rational basis test, the same deference, judicial deference to economic legislation that courts in the state, in the Commonwealth, and in the nation's courts and the Supreme Court have applied ever since the New Deal. When you have economic legislation that does not affect a discreet and insular minority, Caroline Product's footnote 4, it may apply retroactively so long as it serves a paramount or important public interest. It does here. As Judge Lynch points out, it preserves the incentive of universities now and in the future to protect the public health and safety of their students, staff, and faculty without fear of crippling monetary liability if they comply with state orders. And, Judge Howard, it also serves an interest in preserving the financial stability of institutions of higher education, which are such an important part of the Commonwealth's economy, as the legislature was entitled to assume. And it's no secret now that a lot of institutions of higher education are under extreme financial pressure. These lawsuits have persisted for four years. They've resulted in no adjudicated results for the plaintiffs and the plaintiffs' lawyers in these cases. There have been a handful of settlements. There's evidence in the Brandeis record that was before Judge Wharton in Omori where he applied Section 80B to give judgment to Brandeis, showing that plaintiffs received a few hundred dollars here and there and the plaintiffs' lawyers received, in settlements, massive fees. The legislature was entitled to find that allowing these lawsuits for monetary relief, whether styled as contract damages or restitution damages for unjust enrichment. What was the precise purpose in the Massachusetts legislative history, if you know? Your Honor, there's no preamble, but the test under American Manufacturing, the key Supreme Judicial Court case, or under Home Loan v. Blaisdell, the key federal U.S. Supreme Court contract case, is, is there a conceivable public purpose? Legislature doesn't have to announce its purpose, and there's two conceivable public purposes here that the Court has already explored with my opposing counsel, protecting the public health and protecting the financial stability of institutions of higher education. And, Your Honor, to go back to Lynch to your point, obviously if you want to incentivize universities in the future to do just what Boston University did here and what other universities in the Commonwealth and in Rhode Island did, if you want to incentivize universities, protect your students first. Go online. Remember, March 2020, we didn't have vaccines. We didn't have treatments. It was a deadly disease, and Governor Baker ordered us not to allow classes. It's from time immemorial, nobody has had a contract right, Judge Lynch, to expect performance that would be illegal to perform. So the suggestion that we're impairing any reliance or deep-seated contract rights here through this legislation is simply wrong. So, Judge Helpe, the legislature clearly had a conceivable interest in incentivizing compliance with public health standards. Even if none of these schools are bankrupt or they're still operating, that doesn't matter. That's absolutely right, Your Honor, because the public safety would, if you're going to be hit with massive judgments, you might take a risk next time with somebody's life. And Judge Borton expresses this very well in the Omori v. Brandeis summary judgment ruling, where he says the legislature is entitled to think about the future. People rationally have incentives based on what happened to them in the past. And if you've been allowed to be hit with burdensome, lengthy, protracted lawsuits for monetary relief, you may be cautious in the future. We don't want universities to be cautious with their students' health. That's just prong one of the three prong reasonable tests. But on that prong, does it matter that the legislation does not apply to future suits after future crises? Not at all, Your Honor. It matters only in our favor, and that's because the three parts of the test, of course, there's a paramount public interest, it does not affect settled contract rights, which it didn't here, and it's narrowly tailored. And we think the fact that this is limited narrowly to claims for monetary relief arising from spring 2020 shows why it is narrowly tailored and meets the third prong of the test. And it's narrowly tailored in a second sense, Your Honor, because it obviously carves out bad faith conduct. If there were a showing that a university had done something just to save money, not like the record here where we spent more to educate our students online than we would have, it's undisputed in the record, we spent more to educate our students online than we would have paid if we had in-person education. I can go through the record sites on that if you want. But, Your Honor, the point here is this is a paradigmatic case of good faith conduct. So ADB is clearly constitutional because it serves paramount interests in protecting the public health now and in the future. Do any of the plaintiffs, or at least the ones that are named in the complaint, do any allege that, you know, they did not obtain the degree? Because I assume they all, one way or another, like almost probably everybody did. That's correct, Your Honor. Every one of these plaintiffs obtained their degree and went on to graduate on time. And, you know, so, you know, we've, Your Honor, what this is, it's not like the yo-yo ma hypo, my friend on the other side raised. The case here is. Which is a good hypo. Let me try this one out. The plaintiff's lawyers often like the hypo of they ordered a hamburger. They ordered a steak and they got a hamburger. That's not this case. This is the case where the plaintiff ordered a hamburger. Government said beef is outlawed, can't serve it, health and safety risk. The diner scrambles. It gives you an impossible burger instead. It's faux meat. It's made out of vegetables. The plaintiff eats the impossible burger and then says they didn't like it and they want restitution back. Well, the law is clear that unless the diner is unjustly enriched, there's no restitution. The touchstone of unjust enrichment is enrichment. And if the diner had to spend more money on the impossible burger that was fake meat than it would have had to spend on the hamburger, there's no unjust enrichment, there's no contract violation. So in the real world, unjust enrichment would be, for example, the students' semester was not continued. They couldn't go online. They had to pay like for a fifth year of college. And then the school got all that money for that year anyway and plus kept getting money. Exactly, Your Honor. That's unjust enrichment. That is not this case. Your hypothetical and none of all of these plans ate the hamburger. Is it actually appropriate under a constitutional claim to get into the merits of whether there was or was not on this record unjust enrichment? There's no need to, Your Honor. There's no need to whatsoever. ADB is a complete ground for affirmance. Irrespective of the first two reasons why we think affirmance is also justified, we think there's no unjust enrichment and that's the only issue in the case. We think that's undisputed on the facts of the record. We lost at least $8 million, if not $52 million, in trying to come up with substitute services. That's the very thing that your opponent disputes. Actually, Your Honor, our opponent does not dispute the lack of unjust enrichment measured as Boston University's extra expenses. They argue that's the wrong measure. The wrong measure, Your Honor. I want to go back to ADB. We don't need to do any of this for ADB. The only reason the unjust enrichment idea comes in, Your Honor, is I think BERT is very helpful on prong two of ADB. We look at ADB for three things. Does it serve a public interest? Yes. Public health and safety, financial stability of higher education in the Commonwealth. Second, did it upset settled contract rights on which there was a ground for reliance? BERT versus University of Rhode Island answers that question definitively, no. You do not have a right to rely on the performance of a contract where performance would be not just unsafe but illegal. No one has a contract reliance interest in the performance of a contract that has become impossible to perform because it would be illegal to do so. So there was no strong, Judge Lynch, it wasn't just that these were implied contract rights, weak enough as they are. They were contract rights that were discharged completely by impossibility once Governor Baker's orders made it impossible for us to hold online classes. Under normal Massachusetts law, impossibility to perform a contract still leaves the question of whether there was unjust enrichment. Correct, Your Honor. I thought you were beginning to say performing a contract which is illegal as a matter of public health determinations made by the appropriate authorities is a special category of impossibility. Not exactly, Your Honor. What I'm suggesting is that the contract rights here were weak. When we look at whether a statute is constitutional when it's retroactive, we look at did it impair strong contract rights. I'm giving you just a set of arguments why the contract and restitution rights here were weak. Number one, contract rights were implied prior law like this court's decision in Cuse Non Gle, pointed against tuition refunds when there's an emergency that disrupts classes. Point two is, Burt made clear, and my opponents don't dispute that Massachusetts and Rhode Island law are identical here, that impossibility discharged any contract obligations. That's the end of the case. So now, Your Honor, we get to point three. Well, didn't they have settled restitution expectations? Judge Helpe gave us the hypo where they do. Pandemic arrives, we cancel classes, and we say, yay, let's save all the money. We won't give you anything. And you can go home and you lose your semester. That might give rise to a restitution for unjust enrichment case because then we took the money and we didn't give you a hamburger or an impossible burger. We gave you nothing. That might create a restitution case. But here there's no strong expectation that there should be restitution where the university spent more to educate people online than it did to what it would have spent to educate them at home. And that's undisputed. So on that point, Your Honor, if that's the test, it's undisputed. You started by saying this is a pure issue of law and therefore we can decide it, but it seems to be drifting into there are disputes of fact. And so I find myself a little hesitant to go down that road. I understand that, Your Honor. Let me back up and just go to the legal point, which is the legal point here that I want to leave you with on the restitution issue. We know the contract case is gone. ADB permissibly retroactively takes away the contract rights. So my opponent says, well, they also took away our restitution rights. But the law of restitution is settled in Massachusetts. And that is that unjust enrichment, right? All that's left of this case is Count 3, which plaintiffs pleaded in the alternative in case the contract claims went away. Count 1 and Count 2, the contract claims, are gone from the case. Burt makes that absolutely clear based on impossibility and frustration. So they're left with Count 3. And the law of unjust enrichment is they have to be enriched. Nobody has a right to restitution from a defendant who has not been enriched. We would have been enriched in Judge Helpe's hypo, but there's no expectation absent an ability to prove unjust enrichment. There's no ability to prove restitution. But isn't what appellants are saying, because there's the absolute unjust enrichment. That didn't happen here. But what I believe they're suggesting, similar to the Rhode Island case, was dollar per dollar the school still got enriched to some extent. So what you're saying is the law still precludes that, right? That's absolutely right, Your Honor. And I guess it's a legislative judgment call. Legislature can judge that none of the claims that it was extinguishing retroactively were righteous claims because the legislature was able to conclude, based on facts that became eminently clear over the last four years and within the legislature's province, that universities lost money on the pandemic. They didn't make money on the pandemic. And that happens to be undisputed factually in this case. It's admitted that we lost at least $8 million. That's admitted at Joint Appendix 196 and 198. It's proved by the undisputed testimony of our CFO at Joint Appendix 1165. We lost money. Judge Lynch, you don't have to resolve that for my case. Judge Howard, what you need to do is just look at was the legislature entitled to say that on balance we think we have to make these lawsuits go away. They're not getting the plaintiffs anything. They may be enriching the plaintiffs' lawyers in a handful of settlements. They're costing our universities a great set of burdens in time and expense, litigating these cases. And guess what? At the end of the day, we don't think these are righteous claims because the universities lost money on the pandemic. They spent more to build their IT structure and to train teachers on how to teach on Zoom and to substitute for what they would have done otherwise. They lost money. They didn't gain money. And in that case, Your Honor, the legislature is entitled to say we are not under prong two of the American manufacturing test. We are not impairing righteous restitution rights any more than we're impairing righteous contract rights. Let me also ask you, based on the record, and you mentioned a couple of times that BU lost money, wouldn't there be a sort of like a standing or quasi-standing issue because if BU lost money, then it's not like it's being enriched anyway. Exactly, Your Honor. May I answer, Your Honor? Yes, please. And again, I'm thinking like there could have been another school that's not here. Let's say XYZ College and XYZ actually didn't lose money. They made a profit during all this. Would it be a different scenario or, you know? Your Honor, that's where I would respectfully suggest it's the job of this court to defer to the legislature's balancing of the interests of those schools against the interests of others. So the legislature can say most schools, from what we understand, are losing money. Absolutely. So let's do it all across the board. Absolutely, Your Honor. That's absolutely within the legislature's province. And let me also ask you, when the legislation got passed, to the extent you know, were there any legislators who objected or they stated any particular reasons why it should not pass? Not to my knowledge, Your Honor. There is no legislative history to refer to on that point. It was passed and signed into law by the governor. And we think that the test here is, is there a conceivable reasonable basis? There is because health, financial stability of universities are important interests. It doesn't impair contract claims that were settled, and here they were discharged by impossibility, as this court held in Burt v. University of Rhode Island. And it didn't impair righteous restitution claims from the legislature's vantage point because it can look at the landscape and say universities lost money through the transition to remote education. They didn't gain money. We're entitled to throw the balance in favor of universities. And finally, it's narrowly tailored. Being limited to claims arising from spring 2020 is a virtue, not a vice, because it makes it narrowly tailored, and it means the retroactivity doesn't need to go further than it does. For all those reasons, Your Honor, we respectfully suggest that the court does affirm on the basis of Section 80B, give clarity and guidance under a very well-settled and deferential judicial test. No need to reach the other issues, but if the court does, we've covered them in the red brief. And if there are no questions on arguments one or two in the red brief, I'll close with a request that we respectfully urge the court to affirm. Thank you. Thank you. Okay, rebuttal? You have four minutes. Thank you, counsel. Please reintroduce yourself on the record. Catherine Lee Boyd for the appellants. Respectfully, it's the court's job to check the legislature, and here a check is warranted. There is no public interest and no policy because the economic well-being has there's been no showing. There is a disputed fact here. In fact, BU, I point you to A11, 86 to 87, came out ahead in 2020. But let's look at the economic well-being of the students and the vested interest because reasonableness is based on balancing, and we have to look at the students' reasonable expectations and in the relationship where they have no bargaining power. We all know that if we send our children to school, have no bargaining power, and they relied on the reasonable expectations. And with respect, this was no illegal contract. This was found to be a valid contract by this court, the district court, and it still is a valid legal contract. What has been excused is performance, and when performance is excused, we look at the net benefits of that performance of substitute goods, Section 50 restitution. I do want to point out a couple of things. Let me ask you, because you're talking about the reasonable expectation, but isn't the reasonable expectation of the students from that perspective to graduate on time, get a degree, which I assume they did? And I know, for example, for housing, they weren't being charged for the housing when they're not living on campus. Housing is a separate contract, and they got restitution for what they didn't get. Here we're in tuition, and the fact that they got a degree only reduces the amount of restitution due, but there's still a very conservative discount that we measured with our evidence. Let me talk about incentives for a minute. What does this bill do to incentivize safety and public health? What it does is say, wink, wink, nudge, nudge, institutions, if you do nothing, you're immunized. If you don't do anything, you're immunized. There's nothing inherently incentivizing about this statute for the future that makes BU do the right thing for students in an emergency. But the law does, and we're just disposing of 250 years of contract law and restitution. And by the way, we're not in unjust enrichment. That claim was dismissed. We're in restitution. We have a trial on restitution, and in that trial, we would have to look at the evidence in favor of restitution, which is, if you look at Section 50 of Third Statement Restitution, which is separate from unjust enrichment, you will see it's measured by the market value of the substitute services. And that's what we have a right to have before the district court, because he unreasonably resolved facts in dispute, which Judge Lynch mentioned. These are all going to facts in dispute. One other thing I'd like you to look at when looking at constitutionality, Florida and North Carolina. North Carolina was held to be constitutional because their immunizing statute was passed during the height of the pandemic. Florida, no, because it was after. It was after the emergency had gone. So there was no help to the future of emergency preparation. In your brief, you cited three federal district court cases involving Florida law, but that's Florida law, and they're only lower court decisions. I don't see why they're pertinent to the federal constitutional issue in front of us, and your brief never explains why. With respect, these were constitutional decisions. No, they're purely under Florida law. Florida law is irrelevant to us. But the public policy underlying that law is the same. This does not incentivize institutions to do better. In looking at the economic well-being of the public, students come to Massachusetts from all over the world. This is the most educated state in the country. What are they to rely on? Already BU has put a disclaimer that they didn't have that immunizes them. That's done under the contract law and the lawyers that they can hire. Students, what are they to rely on? Why don't we look at the economic well-being of the students and their expectations when signing up to go to Tufts and BU and Harvard and Suffolk and on and on? Because now what they see is a legislature in the pocket of these institutions, and they have no reasonable expectations that anything they read or see, which is the law of Massachusetts, creates a contract between universities and students, long held to be contractual relationship. Now that good orderly relationship turned on its head because of lobbyists. And with due respect, I ask that you hold it unconstitutional. You remand to the district court on a restitution, which is what Judge Halpy found would have been due if the plaintiffs had put forward the evidence we put forward. Okay, thank you. Thank you. Thank you, counsel. That concludes the argument in this case.